**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SPRAGUE OWINGS,

    Plaintiff,

vs.                                        Case No: 3:12-cv-1385-J-12-TEM

T-MOBILE USA, INC.,

    Defendant.

_____/

**T-MOBILE USA, INC.'S MOTION TO STAY AND COMPEL ARBITRATION
WITH INCORPORATED MEMORANDUM OF LAW**

    Defendant, T-Mobile USA, Inc. ("T-Mobile"), files this Motion to Stay and Compel Arbitration (the "Motion"), and would state to the Court as follows:

**I.    INTRODUCTION**

    In this case, Plaintiff, Sprague Owings ("Plaintiff"), alleges that T-Mobile violated the Florida Consumer Collection Practices Act (the "FCCPA") and the Telephone Consumer Collection Act ("TCPA) in connection with its attempts to collect the balance owed on his account.

    Plaintiff's claims do not belong in this Court, but instead should be referred to arbitration. When he signed the Service Agreement, subscribed to T-Mobile's services, and used the services, Plaintiff accepted and agreed to T-Mobile's Terms & Conditions, which provide that all claims would be resolved by arbitration or in small claims court.

    For the reasons explained below, this Court should stay this case and compel arbitration.

26257502.2

## II. BACKGROUND FACTS[1]

### A. Plaintiff's T-Mobile Service

Plaintiff first contracted for service with T-Mobile on April 3, 2012. Muzio Dec, ¶ 3. Plaintiff activated a line of service ending in the numbers 0626 (the "0626 Line of Service") and a line of service ending in the numbers 9681 (the "9681 Line of Service") on April 3, 2012, at a T-Mobile store in Jacksonville, Florida, and an account was opened for him ending in the numbers 1207 (the "Account") by T-Mobile. Id. ¶ 3. In order to port in the number for the 9681 Line of Service, Plaintiff activated a temporary third line of service ending in the numbers 7679 (the "7679 Line of Service") on April 3, 2012, as well, and cancelled it on April 4, 2012, when the number for the 9681 Line of Service was able to be ported. Id. ¶ 4. Plaintiff's 0626 Line of Service, 9681 Line of Service, and 7679 Line of Service hereinafter shall be referred to collectively as the Lines of Service.

When a subscriber activates a line of service with T-Mobile, the subscriber enters into a Service Agreement with T-Mobile. Id. ¶ 6. Consistent with T-Mobile's practices, when Plaintiff activated the Lines of Service, he entered in a Service Agreement with T-Mobile. Id. ¶ 7 & Ex. A. The Service Agreement signed by Plaintiff provides that **"[b]y signing this form or activating or using T-Mobile service,"** Plaintiff agreed to certain terms, including a term defining his "Agreement" with T-Mobile as follows:

> My "**Agreement**" with T-Mobile includes: (a) this Service Agreement; (b) T-Mobile's "Terms and Conditions"; and (c) any terms specific to my Rate Place or service. **I can obtain copies of T-Mobile's Terms and Conditions and my Rate Plan specific terms at T-Mobile retail stores, at www.T-Mobile.com (www.TMobilepr.com for Puerto Rico customers), or by calling Customer Care at (800) 937-8997 or 611 from my T-Mobile phone.** I have received and

---

[1] In support of this Motion, T-Mobile is relying on Christopher Muzio's Declaration in Support of T-Mobile USA, Inc.'s Motion to Stay and Compel Arbitration ("Muzio Declaration"), which has been filed in conjunction with this Motion.

> read my Agreement.   The English version of this Agreement will control over any other version.

Id. ¶¶ 7- 9 & Ex. A at 1 (emphasis in original).

Like the Service Agreement, the Terms & Conditions[2] define the "Agreement" between T-Mobile and the subscriber.  Id. ¶ 11.  The Terms & Conditions provide the following definition of the subscriber's "Agreement" with T-Mobile:

> Your agreement with T-Mobile USA, Inc., including its affiliates, assignees, and agents ("T-Mobile") includes these Terms and Conditions ("T&Cs"), your Service Agreement, applicable supplemental terms and conditions, and your Rate Plan terms, which are available at www.T-Mobile.com (collectively "Agreement").  Your Rate Plan includes your monthly Service allotments for minutes, messages or data ("Allotments"), rates, coverage and other terms ("Rate Plan").  To the extent any term in your Rate Plan expressly conflicts with these T&Cs, the term in your Rate Plan will govern.  Your Agreement applies to each line of Service, although different T&Cs may apply to different lines of Service on your account.

Id. ¶ 11 & Ex. B. at 1.  Plaintiff's "Agreement" with T-Mobile as defined by the Service Agreement and the Terms & Conditions hereinafter shall be referred to as the Agreement.

### B.   The Arbitration Agreement

The Agreement includes clear terms regarding arbitration.

Above Plaintiff's signature, the Service Agreement prominently disclosed the following provision regarding arbitration: "**Disputes.  T-Mobile requires ARBITRATION of disputes UNLESS I OPT-OUT WITHIN 30 DAYS OF ACTIVATION.**  See T-Mobile's Terms and Conditions for details and for procedures available to Puerto Rico Customers for appealing decisions to the Telecommunications Board of Puerto Rico."  Id. ¶ 19 & Ex. A at 2 (emphasis in original).

---

[2]    Based on the activation of the Lines of Service on April 3, 2012, the July 24, 2011, T-Mobile Terms & Conditions (the "Terms & Conditions") apply to the Lines of Service and the Account.  Id. ¶ 10.

In turn, the Terms & Conditions plainly and prominently set forth an Arbitration Agreement that governs all claims or disputes relating to the Agreement and T-Mobile's services, devices, or products, including billing disputes. Id. ¶ 20 & Ex. B ¶ 2. At the outset, customers are informed they should review the Terms & Conditions carefully because, among other things, they require arbitration:

> **Please read these T&Cs carefully.** They cover important information about all T-Mobile services provided to you ("Service") and your phone, handset, device, SIM card, data card, or other equipment or third-party device sued with our Service ("Device"); and any access and usage charges, taxes, fees and other charges we bill you or that were accepted or processed through your Device ("Charges"). **These T&Cs include fees for early termination, Rate Plan changes, and late payments, limitations of liability, privacy and resolution of disputes by arbitration instead of in court.**

Id. ¶ 21 & Ex. B at 1 (emphasis in original).

The Arbitration Agreement itself appears in the second numbered paragraph of the Terms & Conditions, again, prominently disclosed with bolded and capitalized type:

> **2. \* Dispute Resolution and Arbitration. WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW . . . ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT.** This includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, Dealers or third-party vendors) whenever you also assert claims against us in the same proceeding. We each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply (despite the choice of law provision in Section 27). THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).

Id. ¶ 22 & Ex. B ¶ 2 (emphasis in original).

### C. T-Mobile's Arbitration Agreement Allows Full Remedies at Minimal Costs.

Arbitration under the T-Mobile agreement is inexpensive to subscribers. T-Mobile pays all fees and expenses of arbitration for all claims that total less than $75,000, so Plaintiff would incur no arbitration costs for his claims. See id. ¶ 25 & Ex. B ¶ 2.

The Arbitration Agreement allows subscribers to obtain any relief on their individual claims that would be available in court, including statutory damages, attorneys' fees and costs, and injunctive relief. Id. ¶ ¶22, 25 & Ex. B ¶ 2. In addition to any attorneys' fees and costs available by statute, the Arbitration Agreement also gives subscribers a contractual right to recover fees and costs if they prevail in arbitration and have provided notice and negotiated in good faith as required before initiating arbitration, while T-Mobile gives up its rights for fee and cost recovery unless a claim is determined to be frivolous. Id. ¶ 25 & Ex. B ¶ 2.

On the whole, the Arbitration Agreement lays out an efficient, economical dispute resolution process. The Arbitration Agreement also allows subscribers to pursue their claims in small claims court. See id. ¶ 23 & Ex. B ¶ 2.

**D.    Plaintiff Signed the Service Agreement, Accepted the Terms & Conditions, and Never Opted Out of the Arbitration Procedures.**

Plaintiff agreed to the terms of the Agreement and never opted out of the arbitration procedures.

The Terms & Conditions provide the following regarding a subscriber's acceptance of the Agreement with T-Mobile:

> **1. Acceptance. YOUR AGREEMENT WITH T-MOBILE STARTS WHEN YOU ACCEPT**. You represent that you are at least 18 years old (21 years old or legally emancipated if you are a Puerto Rico customer) and you are legally authorized to enter into this Agreement. You accept your Agreement by doing any of the following: (a) giving us a written or electronic signature, or telling us orally that you accept; (b) activating Service; (c) using your Service after you make a change or addition; (d) paying for the Service or a "T-Mobile Device" (a Device purchased from T-Mobile, a T-Mobile dealer, or other T-Mobile authorized retailer ("Dealer")); or (e) opening the T-Mobile Device box or failing to activate Service within 30 days after the purchase of your T-Mobile Device, unless

returned within the Cancellation Period (as defined in Section 4). **IF YOU DON'T WANT TO ACCEPT, DON'T DO ANY OF THESE THINGS.**

Id. ¶ 13 & Ex. B ¶ 1 (emphasis in original).

As stated above, Plaintiff signed the Service Agreement, activated several lines of service with T-Mobile, and indicated his acceptance of the Terms & Conditions.[3] Id. ¶ 18.

The Arbitration Agreement also explains that a claim may be pursued in court only under the circumstances described as follows:

> Notwithstanding the above, **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION** if: (a) your claim qualifies, you may initiate proceedings in small claims court; or (b) **YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE DATE YOU ACTIVATED SERVICE FOR THE RELEVANT LINE (the "Opt Out Deadline").** You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-866-323-4405 or completing the opt-out form located at www.T-Mobiledisputeresolution.com. **Any opt-out received after the Opt Out Deadline will not be valid and you must pursue your claim in arbitration or small claims court.**

Id. ¶ 23 & Ex. B ¶ 2 (emphasis in original).

Plaintiff never opted out of the arbitration procedures for the Lines of Service or the Accounts. Id. ¶ 24. Accordingly, Plaintiff is bound to the Arbitration Agreement for the Lines of Service and the Accounts.

**III.   ARGUMENT**

    **A.   THE COURT SHOULD COMPEL ARBITRATION AND STAY THIS PROCEEDING**

In the Complaint, Plaintiff alleges that T-Mobile violated the FCCPA and the TPCA in connection with its attempts to collect on the Account. While the Service Agreement and Terms & Conditions are not attached to the Complaint, this Court may consider their terms, as they

---

[3] As Plaintiff used T-Mobile services, T-Mobile sent him monthly billing statements. See id. ¶ 14 & Ex. C. The monthly billing statements attached to the Muzio Declaration show that Plaintiff used both the 0626 Line of Service and the 9681 Line of Service during the time period covered by those statements. See id. ¶¶ 15 & Ex. C.

form the basis of the dispute between the parties. When Plaintiff signed the Service Agreement, activated and used T-Mobile services, and agreed to the Terms & Conditions governing the Lines of Service and the Account, he waived the right to litigate these claims in this Court. Under the Terms & Conditions governing the Lines of Service and the Account, these claims must be arbitrated.

Under the federal arbitration statutes, when ruling on a motion to compel arbitration, the court must determine whether a valid written agreement to arbitrate exists and whether an arbitrable issue exists. See Senti v. Sanger Works Factory, Inc., No. 6:06-cv-1903-Orl-22DAB, 2007 WL 1174076, at *5 (M.D. Fla. Apr. 18, 2007); Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999).

### 1. There Is a Written Arbitration Agreement in This Case

The current dispute between the parties is governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. § 1 et seq. The FAA provides that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The term "commerce," as used in the FAA, means interstate commerce. 9 U.S.C. § 1. Thus, since the Arbitration Agreement is contained in "a contract evidencing a transaction involving [interstate] commerce," namely, the Terms & Conditions, and represents "an agreement in writing to submit to arbitration," the provisions of the FAA govern the contract. 9 U.S.C. § 2.

It is not necessary that the Arbitration Agreement itself be signed in order for the parties to be bound by it. The Eleventh Circuit has expressly held that Section 2 of the FAA requires that an arbitration agreement be "written" or "in writing" but does not require that it be signed by the parties. Caley v. Gulfstream Aero. Corp., 428 F.3d 1359, 1368 (11th Cir. 2005); see also Sanders v. Comcast Cable Holdings, LLC, No. 3:07-cv-918-J-33HTS, 2008 WL 150479, at *5 (M.D. Fla. Jan. 14, 2008) ("[N]o signature is needed to satisfy the [FAA's] written agreement requirement."). In Caley, the Eleventh Circuit noted that no provision of the FAA requires that an arbitration provision be signed by either party to be enforceable. See Caley, 428 F.3d at 1369.

Therefore, the Arbitration Agreement governing the Account is a written agreement under the FAA.

**2. Plaintiff's Execution of the Service Agreement and Activation and Use of T-Mobile Services Constituted Consent to the Terms & Conditions, Including the Arbitration Agreement.**

Plaintiff's execution of the Service Agreement, activation of the Lines of Services, and his use of the 0626 Line of Service and the 9681 Line of Service constituted consent to the Terms & Conditions, including the Arbitration Agreement.

Florida and federal circuit have enforced arbitration agreements accepted by a customer's continued use of a product or service. See Krutchik v. Chase Bank USA, N.A., 531 F. Supp. 2d 1359, 1363-65 (S.D. Fla. 2008) (holding that continued use of credit card after mailed arbitration agreement was presumptively received constituted acceptance of the arbitration agreement); Sanders v. v. Comcast Cable Holdings, LLC, No. 3:07-cv-918-J-33HTS, 2008 WL 150479, at *6 (M.D. Fla. Jan. 14, 2008) (enforcing arbitration agreement mailed with cable bills where bills were received and paid and customer continued to use cable services and continued to pay the bills); Rivera v. AT&T, Corp., 420 F. Supp. 2d 1312, 1320 (S.D. Fla. 2006) (enforcing new customer service agreement including an arbitration provision mailed to existing customers,

where service agreement provided that continued use of AT&T's services constituted agreement with the terms and conditions and the customers continued to use the services).

Here, the Terms & Conditions stated:

> **1. Acceptance. YOUR AGREEMENT WITH T-MOBILE STARTS WHEN YOU ACCEPT**. You represent that you are at least 18 years old (21 years old or legally emancipated if you are a Puerto Rico customer) and you are legally authorized to enter into this Agreement. You accept your Agreement by doing any of the following: (a) giving us a written or electronic signature, or telling us orally that you accept; (b) activating Service; (c) using your Service after you make a change or addition; (d) paying for the Service or a "T-Mobile Device" (a Device purchased from T-Mobile, a T-Mobile dealer, or other T-Mobile authorized retailer ("Dealer")); or (e) opening the T-Mobile Device box or failing to activate Service within 30 days after the purchase of your T-Mobile Device, unless returned within the Cancellation Period (as defined in Section 4). **IF YOU DON'T WANT TO ACCEPT, DON'T DO ANY OF THESE THINGS.**

Muzio Decl. ¶ 13 & Ex. B at 1 (emphasis in original).

In addition to accepting the Terms & Conditions by signing the Service Agreement, see id. ¶¶ 7, 18, Plaintiff's accepted the Terms & Conditions by activating the Lines of Service, see id. ¶ 3, 4, 18. Moreover, Plaintiff's use of T-Mobile services provides further proof of his acceptance of the Terms & Conditions. The monthly billing statements attached to the Muzio Declaration demonstrate that Plaintiff used both the 0626 Line of Service and the 9681 Line of Service during the time period covered by those statements. See id. ¶¶ 14-15 & Ex. C. Furthermore, Plaintiff never opted out of the arbitration procedures for the Lines of Service or the Account. Id. ¶ 24. Accordingly, Plaintiff is bound by the terms of the Arbitration Agreement.

> **3.    The Arbitration Agreement Is Enforceable Under Federal and Florida Law**

The public policy of the United States[4] and Florida favors arbitration.

The Supreme Court has unambiguously held that these provisions are to be followed and enforced.  Shearson/American Exp. v. McMahon, 482 U.S. 220, 226-27 (1987); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 220 (1985).  Moreover, the Court has consistently applied a presumption in favor of finding arbitrability, stating that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).  Indeed, the Court has stated:

> An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.

United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960).

The United States Congress explicitly provided in the FAA that arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.  Indeed, this provision prohibits a state from "requir[ing] a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."  Southland Corp. v. Keating, 465 U.S. 1, 10 (1984).

The federal policy favoring arbitration is accorded such importance that arbitration awards are virtually unreviewable in any court on most grounds.  See, e.g., Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."); Colonial Penn Ins. Co. v.

---

[4] The Terms & Conditions provide that "We each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply (despite the choice of law provision in Section 27)."  Muzio Decl. ¶ 22 & Ex. B ¶ 2.

Omaha Indem. Co., 943 F.2d 327, 331 (3d Cir. 1991) ("[T]he scope of review of an arbitration award is very limited both at common law and under the Federal Arbitration Act.").

Florida public policy likewise favors arbitration. Laizure v. Avante at Leesburg, Inc., 44 So. 3d 1254, 1257 (Fla. Dist. Ct. App. 2010); see also Orkin Exterminating Co. v. Petsch, 872 So. 2d 259, 263 (Fla. Dist. Ct. App. 2004) ("Both federal and Florida public policy favor resolving disputes through arbitration when the parties have agreed to do so.").

Moreover, arbitration provisions like the one involved here have been routinely enforced by the United States Supreme Court and other courts in standard form contracts for credit cards and other consumer credit,[5] in other form consumer contracts,[6] and in other contexts as well.[7] Indeed, both the federal government and individual states have utilized or required the use of arbitration to resolve consumer disputes.[8] In particular, courts have enforced arbitration agreements in the context of FCCPA claims.[9]

---

[5] See, e.g., Stiles v. Home Cable Concepts, Inc., 994 F. Supp. 1410, 1414 (M.D. Ala. 1998) (mandatory arbitration clause in credit card agreement enforced); Lackey v. Green Tree Fin. Corp., 498 S.E. 2d 898 (S.C. Ct. App. 1998) (same); McCarthy v. Providential Corp., No. C. 94-0627 FMS, 1994 WL 387852 (N.D. Cal. July 19, 1994) (mandatory arbitration clause in consumer lending agreement enforced); Green Tree Agency, Inc. v. White, 719 So. 2d 1179, 1180 (Ala. 1998) (mandatory arbitration clause in mobile home purchase installment contract enforced).

[6] See, e.g., Allied–Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 282 (1989) (mandatory arbitration clause in household pest control contract enforced); Seifert v. U.S. Home Corp., 750 So. 2d 633 (Fla. 1999) (homeowner's claims against builder); N. Am. Van Lines v. Collyer, 616 So. 2d 177 (Fla. Dist. Ct. App. 1993) (consumer's claims against moving company).

[7] See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24 (1983) (holding that mandatory arbitration clauses in construction context are valid and arbitration agreements are distinctly favored).

[8] For example, the Federal Trade Commission, in conjunction with the Better Business Bureau, has established a nationwide third-party arbitration program for disputes that consumers may have with certain automobile manufacturers. See, e.g., F.T.C. Release, Consumers Have Received More Than $3 Million So Far Under FTC/GM Arbitration Program, F.T.C. Doc. No. 9145 (June 25, 1985); cf. Thomas v. Union Carbide Agr. Prods. Co., 473 U.S. 568 (1985) (upholding federal statutory scheme requiring binding arbitration of certain disputes). New York and California have, similarly, established arbitration as a means of resolving disputes in consumer contexts. See N.Y. Gen. Bus. Law § 198-a(k) (authorizing arbitration for resolution of disputes under New York's "lemon law"); Giant Used Cars v. Baptiste, 678 N.Y.S.2d 863 (Sup. Ct. 1998) (dismissing petition for order to vacate arbitration award); Cal. Code Regs. Tit. 16, §§ 3396-3399 (establishing state-certified arbitration programs for automobile disputes). These are merely a few examples of the burgeoning use of arbitration. For its part, the Delaware legislature "enacted a Uniform Arbitration Act . . . similar to the federal [FAA] legislation." Graham v. State Farm Mut. Auto. Ins. Co., 565 A.2d 908, 911 (Del. 1989) (citing 10 Del. C. §§ 5701-5725).

[9] See Baldwin v. Regions Fin. Corp., 98 So. 3d 1210, 1211 (Fla. Dist. Ct. App. 2012) (affirming order granting motion to compel arbitration of putative class action alleging violation of the FCCPA); Reeves v. Ace Cash

### 4. The Arbitration Provision Is Enforceable Generally

The Arbitration Agreement is enforceable in all respects.

#### (a) The Arbitration Provision Is Valid on Grounds of Mutuality and Valuable Consideration

The Arbitration Agreement is valid based on traditional contract principles of mutuality and consideration. Mutuality is evident in the Arbitration Agreement since any dispute or controversy by either side must be submitted to arbitration. Where both parties are bound to submit their disputes to arbitration, there is sufficient consideration. See Kinko's, Inc. v. Payne, 901 So. 2d 354, 356 (Fla. Dist. Ct. App. 2005); see also Rocky Creek Retirement Props. v. Estate of Fox, 19 So. 3d 1105, 11109 (Fla. Dist. Ct. App. 2009) ("[O]ne party's agreement to submit a dispute to arbitration is sufficient consideration to support the other party's agreement to do the same because of the mutuality of obligations that the agreement creates."). Additionally, the Arbitration Agreement is enforceable since the contract is supported by valuable consideration. Mutuality is not even required in an arbitration provision that is otherwise properly supported by consideration. See Avid Eng'g, Inc. v. Orlando Marketplace Ltd., 809 So. 2d 1, 4 (Fla. Dist. Ct. App. 2001) (rejecting lack of mutuality argument and holding that because there was sufficient consideration to support the contract, the arbitration provision was not void for lack of mutuality of obligation).[10] Here, customers, such as Plaintiff, who agreed to the Arbitration Agreement received valuable consideration in the form of the ability to use T-Mobile's services. Under such circumstances, courts have consistently rejected a challenge based on an alleged lack of mutuality.[11]

---

Express, Inc., 937 So. 2d 1136, 1137 (Fla. Dist Ct. App. 2006) (affirming order compelling arbitration of FCCPA claim).
10   See also Restatement (Second) of Contracts § 79 (1981) ("[i]f the requirement of consideration is met, there is no additional requirement of . . . 'mutuality of obligation'").
11   See, e.g., Doctor's Assocs. Inc. v. Distajo, 66 F.3d 438, 452 (2d Cir. 1995) (rejecting mutuality argument raised against arbitration clause; collecting cases); Wilson Elec. Contractors, Inc. v. Minotte Contracting Corp., 878

**(b)     The Benefits of Arbitration**

As shown above, arbitration clauses are favored under federal and Florida law.  Public policy favors arbitration because it permits consumers the opportunity to resolve disputes expeditiously, completely, inexpensively, and frequently without a lawyer.  See Rodriguez de Quijas v. Shearson/American Exp., Inc., 490 U.S. 477, 479-80 (1989); Apex Plumbing Supply, Inc. v. U.S. Supply Co., 142 F.3d 188, 193 & n.5 (4th Cir. 1998); Olde Discount Corp. v. Tupman, 805 F. Supp. 1130, 1142 (D. Del. 1992) (arbitration allows the parties "to avoid the costliness and delays of litigation" (citing Scherk v. Alberto Culver Co., 417 U.S. 506, 510-11 (1974)); Larry Kent Homes, Inc. v. Empire of Am., FSA, 474 So. 2d 868, 869 (Fla. Dist. Ct. App. 1985).

Indeed, mandatory arbitration clauses in individual consumer contracts, even those that appear to be more favorable to one party over the other, are enforceable under federal law. Great W. Mortg. Corp. v. Peacock, 110 F.3d 222, 229 (3d Cir. 1997) ("more than a disparity in bargaining power is needed in order to show that an arbitration agreement was not entered into willingly."). In Stiles v. Home Cable Concepts, Inc., 994 F. Supp. 1410, 1418 (M.D. Ala. 1998), the court upheld a credit card arbitration clause noting that "contracts of adhesion are not per se unconscionable, and have a number of social benefits."  There was no unconscionability where the debtor freely entered into the bargain which allowed the creditor to change the terms of the agreement "even without his consent." Id.

Arbitration is lauded as a dispute resolution method for several reasons.  First, it is less costly than litigation in a court.  A second reason why arbitration is a preferred approach for

---

F.2d 167, 168 (6th Cir. 1989) (rejecting mutuality argument raised against arbitration clause that compelled only one party to submit to arbitration); W.L. Jorden & Co. v. Blythe Indust., Inc., 702 F. Supp. 282, 284 (N.D. Ga. 1988) (same); Willis Flooring, Inc. v. Howard S. Lease Constr. Co. & Assocs., 656 P.2d 1184, 1185 (Alaska 1983) (same); Lackey v. Green Tree Fin. Corp., 498 S. E. 2d 898, 905 (S.C. Ct. App. 1998) (same); Latifi v. Sousa, No. CV95-H-2136 NE, 1996 WL 735260, at *5 (N.D. Ala. Dec. 23, 1996) (enforcing arbitration agreement and holding that no reciprocal promises to arbitrate required).

most consumers is the informality, speed, and procedural simplicity of the arbitration proceeding. Although in some small number of cases an individual party or lawyer may, for tactical or other special reasons, favor litigation in court, such practice is discouraged. The FAA makes plain that Congress has adopted the policy that an agreement to arbitrate instead of litigate is to be <u>favored</u> and strictly enforced, not avoided. See <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.</u>, 460 U.S. 1, 24 (1983). This is precisely the point of the hundreds of cases upholding mandatory arbitration clauses against plaintiffs who would rather litigate. As the Eleventh Circuit observed in <u>Paladino v. Avnet Computer Techs., Inc.</u>, 134 F.3d 1054, 1062 (11th Cir. 1998):

> Arbitration ordinarily brings hardships for litigants along with potential efficiency. Arbitral litigants often lack discovery, evidentiary rules, a jury, and any meaningful right to further review. In light of a strong federal policy favoring arbitration, these inherent weaknesses should not make an arbitration clause unenforceable.

Under the FAA's two-part approach, if: (1) a valid written agreement to arbitrate exists, and (2) the issues before the court are within the scope of the arbitration agreement, then the court is required to direct the parties to arbitrate, without considering the merits of the dispute <u>Painewebber Inc. v. Hartmann</u>, 921 F.2d 507, 511 (3d Cir. 1990), <u>overruled by implication on other grounds by</u> <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 85 (2002); <u>Bevere v. Oppenheimer & Co.</u>, 862 F. Supp. 1243, 1248 (D. N.J. 1994); <u>Goldberg v. Donaldson, Lufkin & Jenrette Secs. Corp.</u>, 650 F. Supp. 222, 225 (N.D. Ga. 1986); <u>Shearson Lehman Bros., Inc. v. Kilgore</u>, 871 S.W.2d 925, 928 (Tex. App. – Corpus Christi 1994).

Accordingly, if the Court finds that a valid, written arbitration agreement exists, and finds that the matter in dispute is within the scope of the arbitration agreement, the Court must direct the parties to arbitrate. Here, arbitration of the claims alleged in the Complaint in this

proceeding is compelled because all the applicable criteria under the FAA mandating arbitration have been met.

Moreover, Plaintiff cannot contend that the Arbitration Agreement limits his opportunity to obtain full relief on his claims. Under the Terms & Conditions, he is entitled to recover any and all damages or other remedies on his claims that would be available in court. See Muzio Decl. ¶¶ 22, 25 & Ex. B ¶ 2. The Arbitration Agreement also gives him full rights to recover attorneys' fees under applicable statutes or as a matter of contract. See id. And he may pursue his claims while incurring no costs for arbitration, because T-Mobile commits to pay all costs for claims under $75,000. Id. ¶ 25 & Ex. B ¶ 2.

### 5. Plaintiff's Claims Must Be Submitted to Arbitration Pursuant to the Terms of the Agreement

Plaintiff's claims must be submitted to arbitration under the terms of the Agreement which controls the Lines of Service and the Account. Plaintiff's claims relate to the T-Mobile services activated by Plaintiff and how T-Mobile handled them and the Account. Accordingly, even if Plaintiff asserted valid claims, which T-Mobile disputes, he cannot pursue the claims in this Court. The claims must be submitted to arbitration under the plain language of the Terms & Conditions.

The Arbitration Agreement of the Terms & Conditions applies by its terms to "**ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS**." Muzio Decl. ¶ 22 & Ex. B ¶ 2 (emphasis in original). Arbitration provisions such as this one have been recognized as being broad in scope. See, e.g., Gregory v. Electro-Mechanical Corp., 83 F.3d 382, 386 (11th Cir. 1996) (discussing arbitration language construed as broad); Seifert v. U.S. Home Corp., 750 So. 2d 633, 637 (Fla. 1999) (noting that "arising out of or relating to" had been interpreted

broadly); Xerox Corp. v. Smartech Document Mgmt., Inc., 979 So. 2d 957, 959 (Fla. Dist. Ct. App. 2007) (construing as broad similar arbitration language); Grektorp v. City Towers of Florida, Inc., 644 So. 2d 613, 614 (Fla. Dist. Ct. App. 1994) (construing the arbitration clause as reflecting a broad arbitration agreement).

Therefore, pursuant to the broad terms of the Arbitration Agreement, Plaintiff cannot pursue the claims in this Court. Accordingly, the Court should compel arbitration of Plaintiff's claims.

### 6. Stay of the Action Is Appropriate Since the Claims Must Be Submitted to Arbitration.

This Court must stay this case since Plaintiff's claims must be submitted to arbitration. This is particularly true under the FAA which provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. (emphasis added).

This section requires a court to stay judicial proceedings, upon application of a party, if the court determines that the matter raised is one which should have been referred to arbitration. Because the instant matter is referable to arbitration, Section 3 applies here.

Because the allegations set forth in Plaintiff's Complaint establish that the claims arise out of the Agreement, and because the Agreement establishes arbitration as a method of dispute resolution, this Court should compel arbitration and stay this action.

### CONCLUSION

WHEREFORE, T-Mobile respectfully requests that the Court stay this proceeding and compel arbitration, and grant such other and further relief as is just, equitable, and proper.

Dated: February 25, 2013

/s/ Sara G. Witmeyer
Sara G. Witmeyer

CARLTON FIELDS, P.A.
James B. Baldinger
Florida Bar Number 869899
E-mail: jbaldinger@carltonfields.com
CityPlace Tower
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, FL 33401
Telephone: (561) 650-8026
Facsimile: (561) 659-7368

Fentrice D. Driskell
Florida Bar Number 0833851
E-mail: fdriskell@carltonfields.com
Sara G. Witmeyer
Florida Bar Number 28072
E-mail: switmeyer@carltonfields.com
Post Office Box 3239
Tampa, Florida 33601-3239
Telephone: (813) 223-7000
Facsimile: (813) 229-4133

And

ALSTON & BIRD LLP
Kristy McAlister Brown
Florida Bar No: 433640
E-mail: kristy.brown@alston.com
1201 W. Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7584
Facsimile: (404) 881-7777

*Attorneys for Defendant T-Mobile USA, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2013, a copy of the foregoing was served by CM/ECF on the filing users.

/s/ Sara G. Witmeyer
Sara G. Witmeyer