**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SPRAGUE OWINGS,

      Plaintiff,

vs.                         CASE NO. 3:12-cv-1385-J-12TEM

T-MOBILE USA, INC.,

      Defendant.

_____

## REPORT AND RECOMMENDATION[1]

This case is before the Court on referral from the Honorable Marcia Morales Howard for issuance of a report and recommendation on T-Mobile USA, Inc.'s Motion to Stay and Compel Arbitration (Doc. #9, "Motion to Compel Arbitration").[2]   Plaintiff filed a memorandum in opposition to the sought relief (*see* Doc. #15, "Response").   With the Court's permission, Defendant filed a reply to Plaintiff's Response (*see* Doc. #25, "Reply"). The Court held a telephonic hearing on this matter on May 29, 2013 (*see* Doc. #26, "Clerk's Minutes").[3]   Upon consideration of the arguments from counsel, the applicable case law and the record as a whole, the undersigned respectfully recommends the Motion

_____

[1]Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); and, Local Rule 6.02(a), United States District Court for the Middle District of Florida.

[2]Plaintiff may be referred to as Owings or Plaintiff.  Defendant may be referred to as T-Mobile or Defendant.

[3]The transcript of the telephonic hearing is filed in the record at docket entry number 27. Hereafter, the Court will refer to the transcript as "Tr." followed by the appropriate page number.

to Compel Arbitration **be GRANTED**.

## BACKGROUND FACTS

On April 3, 2012, Plaintiff independently purchased two cellular telephones from a source other than Defendant, signed a Service Agreement at a T-Mobile store in Jacksonville, Florida, and activated cellular phone service with T-Mobile (*see* Doc. #10-1, "Service Agreement").   *See also* Response at 3.   Plaintiff claims the T-Mobile representative told him he could have service without a contract, and thus no contract exists between these two parties.  *Id.*

The Service Agreement is comprised of two pages, with over half of page two left blank below the signature line.  Sprague Owings is specifically identified as the customer in the Service Agreement, which sets the "Start Date/ Contract End Date" as "04/03/2012" and "04/03/2014."   The Service Agreement also provides for "Total Monthly Recurring Charges for this Line of Service (excluding taxes and surcharges)" of $79.98.  *Id.*  The first clause on page two of the Service Agreement, directly above Plaintiff's signature, states in pertinent part that "T-Mobile requires **ARBITRATION** of disputes **UNLESS I OPT-OUT WITHIN 30 DAYS OF ACTIVATION**" (emphasis in the original).  The second clause on page two sets forth: "**Cancellation and Return Policy**.  For contracts of 1 year or more, I may cancel my Rate Plan without paying a termination fee by going back to the original point of purchase and returning all phones I acquired with my activation within 14 days from my activation." (emphasis in the original).  *See id.*

Plaintiff received monthly statements from T-Mobile from May 2012 through November 2012 (*see* Doc. #10-3).  Plaintiff made payments for the T-Mobile service until

August 2012.  *Id.*  In either June or July 2012, Plaintiff cancelled the service for the two phones on his account when he transferred his telephone numbers to another service provider.  *See* Response at Ex. B.  On August 21, 2012, Plaintiff drafted and mailed a letter to T-Mobile's Executive Customer Relations in Albuquerque, New Mexico.  *See* Complaint at Exs. A-B.  Plaintiff stated he was "sick and tired of getting robo calls from [T-Mobile], and sick [and] tired of calling customer service only to spend much time and achieve nothing. . . ."  *Id.* at Ex. A.  Plaintiff advised he had therefore "left T-Mobile" and was fully content with service from a different cellular provider.  *Id.*

On September 4, 2012, Plaintiff filed a complaint against T-Mobile with the Better Business Bureau.  Response at Ex. B.  Plaintiff complained he was constantly harassed by T-Mobile's employees in an effort to collect charges, most of which were termination fees because he had "switched" to another cellular carrier due to problems with his T-Mobile service.  *Id.*  The Better Business Bureau contacted T-Mobile, which ultimately attempted to resolve this issue with Mr. Owings on October 30, 2012, by crediting his closed account for the termination fees and related charges, leaving phone usage charges of $134.51 outstanding.  *Id.*

On December 26, 2012, Plaintiff filed this lawsuit alleging Defendant has violated provisions of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.*, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (*see* Doc. #1, "Complaint").[4]  Plaintiff asserts Defendant violated the TCPA by willfully and knowingly

---

[4]The Supreme Court recently declared that federal and state courts have concurrent jurisdiction over private causes of action arising under the TCPA. *See Mims v. Arrow Fin. Serv., LLC*, 123 S. Ct. 740, 745 (2012); *see also Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1165 n.6 (11th Cir. 2012).

placing non-emergency calls to Plaintiff's cellular telephone, using an artificial dialing system and/or an artificial or pre-recorded voice, without Plaintiff's prior express consent. Complaint at 5-6.  Plaintiff further claims Defendant violated the FCCPA with telephone communications that occurred with such frequency as could reasonably have been expected to abuse or harass the Plaintiff. *Id.* at 6-7.

Defendant has yet to file a formal response to the Complaint, but instead moved the Court to stay this action and compel arbitration in accordance with the Service Agreement between Plaintiff and T-Mobile.[5]  Defendant argues, *inter alia*,  this case should be stayed pursuant to public policy favoring enforcement of arbitration clauses. Motion to Compel Arbitration at 13-14.  Defendant also argues the arbitration provisions stated in the Service Agreement that Plaintiff signed and in T-Mobile's Terms and Conditions of service, which are incorporated by reference into the Service Agreement, are valid and fully enforceable. *Id.* at 12-16 (*see also* Doc. #10-2, "T-Mobile Terms & Conditions").

Owings responded to the Motion to Compel Arbitration objecting to Defendant's sought relief and arguing the Court "should not blindly enforce the arbitration provision referenced by T-Mobile," in part because "[n]o valid agreement to arbitrate exists because T-Mobile's representative advised Mr. Owings that he could subscribe to its services without a contract if he purchased and used his own cellular phone, which he did." Response at 1,4.

## ANALYSIS

In declining to voluntarily arbitrate this case, Plaintiff challenges the actual creation

---

[5]At the parties' request, the Court has stayed all preliminary pretrial matters pending resolution of the Motion to Stay and Compel Arbitration (*see* Doc. #20, "Court Order").

of a contract with T-Mobile. The disputed contract, *i.e.* the Service Agreement, contains

an arbitration clause.   The terms and conditions of service, adopted as part of the Service

Agreement, contain a more detailed arbitration provision.   Neither party challenges the

applicability of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, to settle disputes

as outlined in the contract, nor do they challenge the validity of the arbitration agreement.

### *I.  The Question of a Contract*

The dispute lies in Plaintiff's stated belief that he did not enter into a contract with

Defendant.   Because the asserted formation of the contract between Mr. Owings and T-

Mobile occurred in Florida, and there is no choice of law provision to the contrary, the

substantive law governing Florida contracts controls this issue.[6]   In applying Florida law

to a contract dispute, the Eleventh Circuit recently stated:

> A contract is made under Florida law when three elements are present: offer,
> acceptance, and consideration.  A promise, no matter how slight, qualifies
> as consideration if the promisor agrees to do something that he or she is not
> already obligated to do. The consideration required to support a contract
> need not be money or anything having monetary value, but may consist of
> either a benefit to the promisor or a detriment to the promisee. Florida
> adheres to the rule of contract construction that a contract's provisions are
> construed against the drafter.

*Britt Green Trucking, Inc. v. FedEx Nat'l LTL, Inc.*, No. 12-10257, 2013 WL 709830, at *2

(11th Cir. Feb. 28, 2013).[7]   Accepting the facts in the light most favorable to Plaintiff, the

three elements of contract formation were present when Plaintiff signed the Service

Agreement.   T-Mobile offered to provide cellular service at an agreed upon price, Plaintiff

---

[6]Neither the Service Agreement, nor the Terms and Conditions, specify a different choice
of law.  *See* Service Agreement; *also see* T-Mobile Terms & Conditions.

[7]Unpublished opinions are not considered binding authority; however, they may be cited
as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

accepted and utilized the service.  Moreover, T-Mobile billed for services stated in the agreement and Plaintiff paid for services for three months.

Plaintiff, however, argues no contract was made with T-Mobile because there was no "meeting of the minds;" he did not intend to agree to a contract.  *See* Tr. 19, 24-24.  The Court finds Plaintiff's actions belie his assertions.  Plaintiff does not dispute he signed the Service Agreement after purchasing his cellular phones elsewhere and returning to the T-Mobile store to activate them.  In the signed agreement, the wording directly above his signature includes language expressly stating in bold print that T-Mobile requires disputes be handled via arbitration, with the caveat that the individual signing the agreement may opt-out of the arbitration requirement if done within thirty days of activation.  Thereafter, Plaintiff availed himself of the agreed upon service plan through usage of the activated cellular phones and payment of T-Mobile's bills for three months.

Counsel argued at the hearing that Plaintiff opted out of the contract with T-Mobile, and therefore opted out of the arbitration provision.  *See* Tr. at 23-24.  This argument runs afoul of Plaintiff's conduct.  First, Owings used the cell phone service well beyond the fourteen days that is spelled out in the Service Agreement as the time within which the consumer can cancel service without penalty.  *See also* Service Agreement at 2.  Second, Owings used the service the thirty days within which the Service Agreement clearly provides a person may opt-out of arbitration for resolution of disputes.  *See id.*  Moreover, T-Mobile provides a consumer may opt-out of the arbitration provision within thirty days by either calling a toll free number provided in the Terms and Conditions, or completing an opt-out form available on T-Mobile's website.  *See* T-Mobile Terms and Conditions at 1-2.

Under Florida law, a valid contract arises when the parties' assent is manifested through written or spoken words, or inferred in whole or in part from the parties' conduct. *L & H Const. Co., Inc. v. Circle Redmont, Inc.*, 55 So.3d 630, 634 (Fla. 5th DCA 2011) (quotation marks and citation omitted).  Mr. Owings' conduct in reliance on T-Mobile's rate plan as set forth in the signed Service Agreement validates the mutual assent of the parties.[8]  Thus, an enforceable contract was formed between Plaintiff and Defendant.[9]

### *II.  Defendant's Motion to Compel Arbitration*

Within this district, "[m]otions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Bell v. Atl. Trucking Co., Inc.*, 3:09-cv-406-J-32MCR, 2009 WL 4730564, at *2 (M.D. Fla. Dec. 7, 2009) *aff'd,* 405 Fed.  Appx. 370 (11th Cir. 2010).  Rule 12(b)(1) motions come in two varieties: factual attacks and facial attacks.  *Id.*  This Court has held that motions to compel arbitration are factual attacks on subject matter jurisdiction.  *Id.* at *3.

On a factual attack, the trial court may "weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches

---

[8]The undersigned respectfully suggests the Service Agreement itself contains the elements necessary to establish a valid contract in Florida and it is therefore unnecessary to discuss in depth or analyze the provisions of the T-Mobile Terms and Conditions.

[9]Even if the District Court were to disagree that a valid contract was formed between Mr. Owings and T-Mobile, the District Court should construe Plaintiff's argument opposing arbitration as one raising a fraud in the inducement defense to the contact and direct the parties to proceed to arbitration under the precedent of  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-07 (1967) (finding if the claim to avoid arbitration is fraud in the inducement of the overall contract, the correct course is to severe the arbitration provision and send the fraud issue to the arbitrator for determination); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-49 (2006) (citing to *Prima Paint* and finding a challenge to validity of the contract as a whole goes to the arbitrator to determine).

to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.), *cert. denied,* 454 U.S. 897 (1981)).  District courts within the Eleventh Circuit have long applied the summary judgment standard when ruling on a Rule 12(b)(1) motion to dismiss that asserts a factual attack on subject matter jurisdiction, when the merits of the case are intertwined with the jurisdictional question.  *See id.* at 1530.  Recently, the Eleventh Circuit found courts should apply a Rule 56 summary judgment standard in evaluating motions to compel arbitration that are considered as factual attacks on subject matter jurisdiction.  *See Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed. Appx. 782, 785-86 (11th Cir. 2008) (adopting reasoning of the Third Circuit to apply summary judgment standard when reviewing a contested agreement to arbitrate).  The Eleventh Circuit agreed with the Third Circuit that when a district court orders arbitration in a contested arbitration agreement, the ruling is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate."  *Id.* (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir.1980)).

*The parties agreed to arbitrate disputes*

Having found a valid contract existed between Mr. Owings and T-Mobile, the Court now turns its attention to whether arbitration should be compelled on the claims raised in the Complaint.  "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute," applying the "federal

substantive law of arbitrability" to any arbitration agreement that falls within the coverage

of the FAA. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626

(1985) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24

(1983)). It is well established that "parties cannot be forced to submit to arbitration if they

have not agreed to do so." *Chastain v. Robinson–Humphrey Co.,* 957 F.2d 851, 854 (11th

Cir.1992). When an agreement to arbitrate is challenged by one of the parties, it is the

district court which must decide whether the arbitration provision should be enforced.

*Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.,* 272 Fed. Appx. 782, 785-86 (11th

Cir. 2008) (citing *Chastain*, 957 F.2d at 854). The district court will decide as a matter of

law whether there is any genuine issue of material fact over whether the parties agreed

to arbitrate. *Id.*[10]

The party resisting arbitration must unequivocally deny that an agreement to

arbitrate was reached and must substantiate the denial of the agreement with enough

evidence to make the denial colorable. *Magnolia Capital Advisors, Inc.*, 272 Fed. Appx. at

785 (citing *Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 819 (11th Cir.1993)). Here,

Plaintiff has unequivocally denied he entered into any contract with T-Mobile, irrespective

of whether it contained an arbitration agreement. *See* Response at Ex. 1, "Plaintiff's

Affidavit." The only evidence of this denial, however, is set forth in the affidavit Plaintiff

––––––––––––––––––––

[10]Here, the distinction is made between an agreement to arbitrate and the overall contract encompassing the agreement to arbitrate. *Compare Buckeye Check Cashing*, 546 U.S. at 449 (reaffirming *Prima Paint* finding that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator) *with Magnolia Capital*, 272 Fed. Appx. at 785-86 (applying a Rule 56 summary judgment standard when deciding whether to order arbitration when the agreement to arbitrate is contested).

submitted when responding in opposition to the Motion to Compel Arbitration.  The Court has found that despite Plaintiff's protestations, under Florida law he entered into a binding contract upon signing the Service Agreement at a T-Mobile store.  Offer, acceptance and consideration were clearly present in the formation of the contract.  Plaintiff relied on the contract by using T-Mobile's cellular service and initially paying T-Mobile's charges that are set forth in the contract.  Aside from Plaintiff's statements, nothing in the record suggests Plaintiff challenged any aspect of the Service Agreement prior to his August 21, 2012 letter to T-Mobile's Executive Customer Relations.  An agreement to arbitrate was clearly set forth on the face of the signed Service Agreement.  Notwithstanding Plaintiff's overall denial of a contract between himself and T-Mobile, upon review the Court finds Plaintiff has not presented evidence sufficient to find his denial of an agreement to arbitrate is colorable.

### The Service Agreement is not unconscionable

Plaintiff also argues "[n]o valid agreement to arbitrate exists because the purported 'agreement' between T-Mobile and Mr. Owings is procedurally and substantively unconscionable."  Response at 5, 6-11; *see also* Tr. at 19-20, 31-32.  To void an agreement to arbitrate as unconscionable, both procedural and substantive unconscionability must be shown by the party seeking to avoid the arbitration.  *See Dorward v. Macy's Inc.*, No. 2:10-cv-669-FtM-29DNF, 2011 WL 2893118, at *2 (M.D. Fla. Jul. 20, 2011) (citations omitted).  Consideration of the following four factors enables the Court to determine whether a contract is procedurally unconscionable under Florida law:

(1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a

meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

*Dorward v. Macy's Inc.*,  2011 WL 2893118, at *5 (citing to *Pendergast v. Sprint Nextel*

*Corp.,* 592 F.3d 1119, 1135 (11th Cir.2010) (citations & subsequent history omitted)).

In this instance, the Court has considered all four of the Pendergast factors and finds the Service Agreement in question is not procedurally unconscionable.  First, Plaintiff has not alleged he was unduly pressured or harassed to enter into the Service Agreement. In fact, Plaintiff left and later returned to the T-Mobile store at which he signed the agreement and activated service on his purchased cell phones.  Second, despite unequal bargaining power between a large corporation and a single individual, Plaintiff was given a meaningful choice at the time he signed the Service Agreement through the boldly stated opt-out provision of the arbitration clause. Plaintiff had ample opportunity to read and understand the terms of the Service Agreement, both under the fourteen day cancellation period and the thirty day arbitration opt-out period.  Here, there was no take-it-or-leave-it provision in the Service Agreement.  The caveat that the consumer may opt-out of arbitration within thirty days of signing the agreement obviates any argument of procedural unconscionability.  Finding the Service Agreement is not procedurally unconscionable, the Court need not consider the possibility of substantive unconscionability.

Giving Plaintiff the benefit of the doubt and all reasonable inferences, as the Court must under a summary judgment standard of review, the undersigned finds Plaintiff and T-Mobile voluntarily entered into an enforceable contract with Mr. Owing's signing of the Service Agreement and his subsequent use of T-Mobile services.  Thus, Plaintiff implicitly

agreed to arbitrate any disputes with T-Mobile by not opting out of the stated arbitration requirement within thirty days of signing the Service Agreement and activating cellular service with T-Mobile.

## *Arbitration is strongly favored*

The Court's analysis is made with the acknowledgment that arbitration of commercial disputes, such as this one, is strongly favored.  *See Senti v. Sanger Works Factory, Inc.*, No. 6:06-cv-1903-Orl-22DAB, 2007 WL 1174076, at *4 (M.D. Fla. Apr.18, 2007) (citing *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 270-71 (1995)); *see also AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011) (finding California's judicial rule regarding unconscionability of class arbitration waivers was an obstacle to accomplishment of the FAA's objectives and holding the FAA preempted California's rule). Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, provides in relevant part:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The Supreme Court has found Congress intended for the FAA to be interpreted liberally, favoring arbitration agreements such that any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration.  *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25.  The Court further found the  deference to upholding arbitration agreements should stand, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.*  Thus,

"questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  *Id.* at 24.

*The claims fall under the scope of the agreement to arbitrate*

Do Plaintiff's claims of TCPA and FCCPA violations fall within the scope of the arbitration clause set forth in Service Agreement?  The answer is yes.[11]  The alleged violations are tied directly to charges that are set forth in the Service Agreement.  Thus, Plaintiff's claims have the requisite substantial relationship and nexus to the contract and the agreement to arbitrate.  *See Jackson v. Shakespeare Foundation*, 108 So.3d 587, 593 (Fla. 2013) (finding a contractual nexus must exist between the claim and the contract when disputes over arbitrability of a claim arise).  "[A] claim has a nexus to a contract and arises from the terms of the contract if it emanates from inimitable duty created by the parties' unique contractual relationship.  *Id.*  Plaintiff's claims are directly tied to the collection of charges set forth in the Service Agreement.  *See Rhodall v. Verizon Wireless of the East, L.P.*, No. C/A No. 1:10-3195-MBS, 2011 WL 4036418 (D.S.C. Sept. 9, 2011) (finding disputes over collection of past due charges fall within the ambit of a similarly broad arbitration provision).  Thus, Plaintiff's claims emanate from a duty created by the Service Agreement.

---

[11]In light of the broad language of the commitment to arbitrate contained within the Service Agreement itself, the Court finds it unnecessary to discuss in detail the arbitration agreement set forth in the Terms and Conditions.  The scope of that agreement is however, broad enough to encompass Plaintiff's claims of violations of the FCCPA and the TCPA.  Paragraph 2 of T-Mobile's Terms and Conditions sets forth that "**ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT.**"

Reading the Service Agreement as a whole, it is clear T-Mobile intended for the consumer to be aware that any issues touching upon the Service Agreement would be subject to arbitration unless the consumer opted out of that provision within thirty days of signing the Service Agreement.  Plaintiff had only to read the Service Agreement to know he was agreeing to arbitrate.  Not only does the Service Agreement incorporate T-Mobile's Terms & Conditions of service, which include a detailed arbitration provision, the Service Agreement itself put Plaintiff on notice that arbitration of any disputes involving T-Mobile was mandatory if Plaintiff did not timely opt-out.

## **CONCLUSION**

Accordingly, it is respectfully recommended T-Mobile USA, Inc.'s Motion to Stay and Compel Arbitration (Doc. #9) be **GRANTED**.  If this Report and Recommendation is adopted, the undersigned further recommends the Clerk be directed to close the file administratively and the parties be required to file periodic reports on the status of the arbitration.

**DONE AND ENTERED** at Jacksonville, Florida this 19th   day of June, 2013.


_____
THOMAS E. MORRIS
United States Magistrate Judge

copies:
The Hon. Howell W. Melton
The Hon. Marcia Morales Howard
Counsel of Record

14